**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| 1524948 ALBERTA LTD., an Alberta, Canada corporation d/b/a Terra Marketing Group, | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 1:10-CV-02735-RWS |
| v. | : : | |
| AMANDA LEE, an individual; JOHN DOES 1 through 50, real names unknown, the owner(s), proprietor(s), and/or author(s) of the website known as "pennyauctionwatch.com," | : : : : : : : | |
| Defendants. | : | |

## ORDER

This case is before the Court for consideration of Defendant's Motion to Dismiss Plaintiff's Complaint [13]. After reviewing the record, the Court enters the following Order.

## Background

This case revolves around a recent phenomenon of the Internet: the "penny auction" website. "Penny auctions are online auctions in which consumers must purchase bids, usually for $0.50 or $1 each." Phil Mulkins,

‘Free’ Home Trial Offers Cost Unwary Consumers a Bundle, Tulsa World, May

29, 2011, at E2. Consumers place bids on individual items until a clock—which

increases when bids are placed—runs out and there is a winner. (Dkt. No. [13]

at 3–4). Normally, unsuccessful bidders must pay for their placed bids. (Id. at

4). Plaintiff 1524948 Alberta Ltd. d/b/a Terra Marketing Group (“Plaintiff” or

“Terra”), a company incorporated in Alberta, Canada, owns and operates a

penny auction site that conducts business under the name SwipeBids at the web

address www.SwipeBids.com. (Dkt. No. [1] at ¶ 9).

Defendant[1] Amanda Lee (“Defendant” or “Lee”) owns and operates a

website located at www.pennyauctionwatch.com (“PAW”). (Id. at ¶ 2).

Defendant says PAW is “a clearinghouse of information, comments and

education on the penny auction industry” that “posts news, reviews and other

reports of penny auction websites.” (Dkt. No. [13] at 5). Plaintiff disputes this

characterization, claiming that PAW’s portrayal “as a consumer protection

website is simply a marketing gimmick[; i]n reality, Defendants generate

---

[1]Plaintiff’s Complaint [1] is brought against, in addition to Lee, 50 John Does
“because the actions at issue took place over the Internet, [causing] the identities of
the Doe defendants [to be] unknown to Plaintiff.” (Dkt. No. [14] at 19). Plaintiff
claims that it “will amend the Complaint as appropriate when such identities are
ascertained,” but is yet unable because “Defendants—including Lee—have
purposefully hidden their identities and locations from Plaintiff and hindered
Plaintiff’s ability to identify them fully.” (Id.).

2

revenue[] … by selling advertising space … to other penny auction site operations and third party affiliates … ." (Dkt. No. [1] at ¶ 19). Lee admits that PAW accepts advertisers, but she says that PAW "does not endorse any advertiser and will remove advertisers who are found to engage in unfair or fraudulent practices." (Dkt. No. [13] at 5–6).

The dispute arises from content posted on PAW about SwipeBids, and an alleged conspiracy against SwipeBids between PAW and others in the penny auction industry. Plaintiff says PAW is a "fake gripe site," "a website that purports to be a neutral or consumer-oriented online forum for the exchange of information about a particular industry sector or business, but which in reality is just a tool for dishonest businesses and persons to disseminate false and damaging statements about a competitor." (Dkt. No. [1] at ¶¶ 1–2). As such a site, PAW allegedly made defamatory statements about SwipeBids with the intent to divert potential customers to other penny auctioneers who advertise on PAW. (Id. at ¶ 11). Furthermore, Plaintiff states that PAW directs customers to buy "bid packs" associated with PAW's sponsors, who then pay PAW a fee. (Id. at ¶ 29). According to Terra, "Defendants create the illusion that [PAW's] message board is populated primarily with the posts of customers[, but] most of the postings are from the Defendants themselves … under multiple fictitious

user names." (Id. at ¶ 32). Lastly, Terra alleges that PAW uses a "search engine spam" technique—in which trademarks are used in, *inter alia*,  HTML files to cause search engines to index a website higher in a search result than it would be otherwise—to attract hits when Internet users search for Plaintiff's trademark. (Id. at ¶¶ 20–21).

Plaintiff says that "[t]he sum total of Defendants' actionable statements about Plaintiff and SwipeBids … are far too numerous to include in [the] Complaint." (Id. at ¶ 27). However, Terra mentions several examples of defamatory statements that allegedly caused lost business and Plaintiff's credit card processor to cancel its contract with Plaintiff, resulting in millions of dollars worth of damages. (Id.). Most importantly to Terra, PAW contains material that accuses Plaintiff of engaging in "bot bidding," in which the penny auction operator runs a program to artificially increase the numbers of bids on a product to the detriment of legitimate bidders. (Id. at ¶¶ 23–24). Bot bidding is a form of fraud and may damage a penny auction website's reputation. (Id.). Other defamatory statements include that SwipeBids consists of "THIEVES" and that customers never receive products even if they win an auction. (Id. at ¶¶ 25–27).

In August 2010 Plaintiff filed a Complaint [1] alleging multiple violations of the Lanham Act, including false advertising, unfair competition, and trade libel. (Id. at ¶¶ 39–58). The Complaint [1] also alleges defamation, intentional interference with contractual relationships, negligent interference with contractual relationships, and tortious interference with potential business relations. (Id. at ¶¶ 59–85). Plaintiff seeks "$6 million in actual damages and at least $12 million in punitive damages" as a result of Defendants' alleged wrongdoing. (Id. at ¶¶ 4, 38).

On November 22, 2010, Lee filed her Motion to Dismiss Plaintiff's Complaint [13].

## Discussion

## I.     Anti-SLAPP Statute is Inapplicable

Lee argues that Plaintiff's Complaint fails to comply with the verification requirements of Georgia's anti-SLAPP statute, O.C.G.A. § 9-11-11.1. (Dkt. No. [13] at 1). Terra responds that (1) the statute does not apply because it directly conflicts with the Federal Rules of Civil Procedure and (2) the statute does not protect Lee's defamatory statements. (Dkt. No. [14] at 10–19). For reasons discussed in Adventure Outdoors, Inc. v. Bloomberg, 519 F. Supp. 2d 1258

(N.D. Ga. 2007), the Court holds that Georgia's anti-SLAPP statute does not apply to this case.

Georgia's anti-SLAPP statute was enacted to ensure "that the valid exercise of the constitutional rights of freedom of speech and the right to petition government for a redress of grievances [are] not … chilled through abuse of the judicial process." O.C.G.A. § 9-11-11.1(a). To further this goal, the statute requires "that the claimant file a written verification containing several certifications." Atlanta Humane Soc'y v. Harkins, 603 S.E.2d 289, 292 (Ga. 2004). If a claim is not verified, then the Court must strike the claim "unless it is verified within ten days after the omission is called to the attention of the party asserting the claim." O.C.G.A. § 9-11-11.1(b).

In Bloomberg, this Court held that the statute was procedural and directly conflicted with Federal Rule of Civil Procedure 8(a):

> If a direct conflict exists, then the Federal Rule controls unless it is found unconstitutional or found to modify, enlarge, or abridge any substantive rights under the Rules Enabling Act, 28 U.S.C. § 2072. The Federal Rules of Civil Procedure are granted presumptive validity under this test and never have been found to violate this provision of the Supreme Court's test, either collectively or independently. See Hanna, 380 U.S. at 472–74 … . Where no direct conflict exists, the state statute controls only if failure to apply it will thwart the "twin aims" of Erie by promoting forum shopping or unfairly discriminating against residents of the forum state. See Hanna, 380 U.S. at 468 … .

Under <u>Hanna</u>, the court finds that the verification provision of O.C.G.A. § 9-11-11.1 is contrary to the Federal Rules of Civil Procedure and does not apply in this case. Section 9-11-11.1 is certainly procedural. <u>See</u> <u>Providence Construction Co. v. Bauer</u>, … 494 S.E.2d 527 (Ga. Ct. App. 1997) (describing [the] anti-SLAPP statute's "several procedural safeguards"). Further, it also applies a heightened pleading requirement on plaintiffs in a defamation action, such that it conflicts with Federal Rule of Civil Procedure 8(a) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a) is constitutional and falls within the scope of the Rules Enabling Act. <u>See</u> <u>Caster v. Hennessey</u>, 781 F.2d 1569, 1570 (11th Cir. 1986) (holding that under <u>Hanna</u> [the] federal court should follow Rule 8(a) rather than [the] state's strict pleading requirements). <u>See also</u> <u>Baird v. Celis</u>, 41 F. Supp. 2d 1358, 1362 (N.D. Ga. 1999) (Camp, J.) (holding that [the] affidavit requirement of O.C.G.A. §9-11-9.1 in medical malpractice actions does not apply to [a] case brought in federal court). For the foregoing reasons, the court will not apply the procedural aspects of Georgia's anti-SLAPP statute to this litigation, and the court finds that any failure of Plaintiffs to "verify" their complaint under the requirements of O.C.G.A. § 9-11-11.1(b) is not grounds for dismissal in federal court. <u>See, e.g.</u>, <u>Stuborn Ltd. Partnership v. Bernstein</u>, 245 F. Supp. 2d 312 (D. Mass. 2003) (refusing to apply procedural rules of [the] Massachusetts anti-SLAPP statute in federal court).

519 F. Supp. 2d at 1278. The court noted that it disagreed with the analysis in

<u>Buckley v. DIRECTV, Inc.</u>, 276 F. Supp. 2d 1271, 1275 n.5 (N.D. Ga. 2003),

and other cases, which applied Ninth Circuit precedent to find "that there was

no <u>Erie</u> conflict between the Federal Rules and the procedural aspects of

Georgia's anti-SLAPP statute." <u>Bloomberg</u>, 519 F. Supp. 2d at 1278 n.8.

7

Indeed, the relied-upon Ninth Circuit precedent interprets California's anti-SLAPP statute, Section 425.16, which is different from Georgia's anti-SLAPP statute. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 970–73 (9th Cir. 1999) (finding California's anti-SLAPP statute to not directly conflict with the Federal Rules of Civil Procedure). Most notably, while California's statute *permits* a party to bring a motion to strike within 60 days of a complaint being served or later at the court's discretion, Georgia's statute *requires* the court to strike a claim "unless it is verified within ten days after the omission is called to the attention of the party asserting the claim." Compare Cal. Stat. §§ 425.16(b), (f) with O.C.G.A. § 9-11-11.1(b). Therefore, Georgia's anti-SLAPP statute more directly conflicts with Rule 8(a) than California's statute, and precedent that interprets California's statute is unpersuasive. Plaintiff's failure to file a verification as dictated by the Georgia anti-SLAPP statute is not a basis for dismissal.

## II.   Shotgun Pleading

Lee argues that "Plaintiff's Complaint is a 'shotgun' pleading, repeatedly held to be improper in this Circuit." (Dkt. No. [13] at 12). Specifically, Lee says that it was improper for Terra to sue Lee and "50 unidentified defendants without specifying who is supposedly liable for what" and to include "seven

8

causes of action, each purportedly incorporating every previously-stated fact and count." (Id. at 21). Terra responds (1) that it intends to amend its Complaint [1] once it knows the identities of the Doe defendants and (2) that no legal authority exists that expressly prohibits a pleading in which each claim incorporates every previously-stated fact and count. (Dkt. No. [14] at 19–20).

The Eleventh Circuit has clearly established that shotgun pleadings are an unacceptable form of establishing a claim for relief. See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1296 n.9 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."). By definition, a shotgun pleading is one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Id. at 1295. As a result, it is oftentimes difficult to discern which allegations of fact correspond to which defendant or claim for relief. Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996); see also Beckwith v. Bellsouth Telecomms. Inc., 146 F. App'x 368, 371 (11th Cir. 2005) ("The failure to identify claims with sufficient clarity to enable the defendant to frame a

responsive pleading constitutes a 'shotgun pleading.' "). The structure of the complaint is such that the defendant may find it impossible to frame a responsive pleading and provide appropriate defenses. Anderson, 77 F.3d at 366. Dismissal of the complaint with prejudice is a drastic sanction and requires a showing that the plaintiff acted willfully or in bad faith, or that lesser sanctions will not suffice. Beckwith, 146 F. App'x at 372.

The Court holds that the Plaintiff's Complaint [1] does not constitute a shotgun pleading. Although it would be better for the Court and the parties if the Complaint [1] specifically cited facts in support of each count, the Complaint [1] is not so flawed that Lee is unable "to frame a responsive pleading." Id. at 371. The Court does not find that the structure of Defendant's Complaint [1] warrants dismissal.

## III.   Plausibility Under Rule 8(a)

### A.   Standard for 12(b)(6) Motion to Dismiss

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). Furthermore, the Court must draw all reasonable inferences in the light most favorable to the plaintiff. Bryant v. Avado Brands,

Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (alteration in original) (quoting Twombly, 550 U.S. at 557).

B.     Parties' Arguments

Lee claims the Court should dismiss Plaintiff's claims because "Plaintff has done nothing more than offer unsubstantiated allegations and 'labels and conclusions' of Defendant Lee's purported liability." (Dkt. No. [13] at 18). Specifically, Lee says that Plaintiff offers no factual support for several allegations: (1) PAW engaged in false advertising as Plaintiff's competitor; (2) PAW caused consumer confusion; (3) PAW contains defamatory statements that "are far too numerous to include"; and, (4) PAW induced persons to terminate their contractual relationships with Plaintiff. (Id. at 18–20). Furthermore, Defendant argues that "Georgia does not recognize a cause of action for 'negligent interference with contractual relationships,' and Count VI is subject to dismissal for that reason alone." (Id. at 20).

Terra responds that "[t]he Complaint contains factual allegations to satisfy the prima facie requirements for each cause of action" and "is confident that discovery will provide Plaintiff the evidence it needs to prove its allegations." (Dkt. No. [14] at 4, 7).

C.    Count I: False Advertising

Plaintiff alleges that Defendants' actions violated Section 43(a) of the Lanham Act, § 1125(a)(1)(B) through false advertising. (Dkt. No. [1] at ¶¶ 39–42). First, the Court must determine whether Section 43(a) applies. "Section 43(a) applies only to claims made 'in commercial advertising or promotion.' " Gillette Co. v. Norelco Consumer Prods. Co., 946 F. Supp. 115, 133 (D. Mass. 1996). To qualify as commercial advertising or promotion, "the communication must be commercial speech by a defendant in commercial competition with plaintiff for the purpose of influencing consumers to purchase the defendant's goods and must be disseminated sufficiently to the relevant purchasing public in such a way as to constitute advertising or promotion." Wilchcombe v. Teevee Toons, Inc., 515 F. Supp. 2d 1297, 1305 (N.D. Ga. 2007). Plaintiff says that Lee and others were involved in a conspiracy to defame SwipeBids and thereby attract customers to penny auction websites in competition with SwipeBids. (Dkt No. [1] at ¶¶ 1, 3, 19, 27–28). Furthermore,

Lee's website, which targeted penny auction customers, disseminated the

allegedly false statements to anyone who accessed the website. (Id. at ¶¶ 20–21,

37). Therefore, the Court finds that the communications at issue are subject to

Section 43(a) of the Lanham Act.

> Having determined that Section 43(a) applies, Plaintiff must establish:
>
> (1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been-or is likely to be-injured as a result of the false advertising.

Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242,

1247 (11th Cir. 2002). However, once a court deems an advertisement to be

literally false, evidence of consumer deception is not necessary. Am. Council of

Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery,

Inc., 185 F.3d 606, 614 (6th Cir. 1999). If a court finds that the defendant's

advertisement is literally false, the plaintiff still must establish materiality,

Johnson & Johnson, 299 F.3d at 1250, that is, that "the defendant's deception is

likely to influence the purchasing decision." Cashmere & Camel Hair Mfrs.

Inst. v. Saks Fifth Ave., 284 F.3d 302, 311 (1st Cir. 2002) (internal quotations

omitted). A plaintiff may show materiality by proving "the defendants

misrepresented an inherent quality or characteristic of the product." Nat'l

Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997) (internal

quotation marks omitted).

The Court finds that Terra has sufficiently plead facts to support its false

advertising claim. Drawing all reasonable inferences in the light most favorable

to Plaintiff and accepting all facts set forth in the Complaint [1] as true, Plaintiff

has alleged that Lee made false statements that deceived consumers and had a

material effect on the purchasing decisions of consumers by impugning

SwipeBids's trustworthiness. (Dkt. No. [1] at ¶¶ 11, 23–27, 29, 32, 40–41).

Furthermore, Terra alleges that Swipebids conducted business in international

and interstate commerce. (Id. at ¶¶ 9, 15). Finally, Lee's allegations of fraud are

likely to injure Plaintiff's business. (Id. at ¶¶ 23, 37, 41). Therefore, Plaintiff

has adequately alleged a claim for false advertising.

    D.    <u>Count II: Infringement of Unregistered Trademark and Unfair
Competition</u>

To establish a prima facie case for infringement of an unregistered

trademark, "a plaintiff must show (1) that the plaintiff had enforceable ... rights

in the mark or name, and (2) that the defendant made unauthorized use of it

'such that consumers were likely to confuse the two.' " Crystal Entm't &

Filmworks, Inc. v. Jurado, No. 10-11837, 2011 WL 2449016, at *6 (11th Cir.

June 21, 2011) (alteration in original) (quoting <u>Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.</u>, 508 F.3d 641, 647 (11th Cir. 2007)).

With respect to the first element, Plaintiff has the burden of proving "prior use," or "the use of a mark in commerce … sufficient to establish *ownership rights* for a plaintiff to recover against subsequent users under section 43(a)." <u>Planetary Motion, Inc. v. Techsplosion, Inc.</u>, 261 F.3d 1188, 1195 (11th Cir. 2001) (emphasis in original). The Eleventh Circuit uses a two-part test to determine whether a party has established sufficient prior use: The claimant must produce " '[e]vidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.' " <u>Jurado</u>, 2011 WL 2449016, at *7 (brackets omitted) (quoting <u>Techsplosion</u>, 261 F.3d at 1195). The Court shall consider the " 'totality of the circumstances' surrounding the prior use of the mark 'to determine whether such an association or notice was present." <u>Id.</u> (brackets omitted) (quoting <u>Techsplosion</u>, 261 F.3d at 1195). Evidence that shows prior use sufficient to establish ownership include, *inter alia*, widespread distribution of the mark because it was accessible to anyone with Internet access; members of the targeted public associating the mark with the product to which it is affixed; the

mark serving to identify the source of the product; and other potential users of

the mark having notice that the mark was used in connection with the product.

Id. (quoting Technosplosion, 261 F.3d at 1195–97).

Terra says that it has "invested heavily in its service mark SwipeBids"

since December 2009 and that the name "has acquired secondary meaning."

(Dkt. No. [1] at ¶¶ 15–17). Also, it states that it "has filed an application with

the United States Patent and Trademark Office" to register the trademark. (Id. at

¶ 18). The Court finds that Plaintiff has sufficiently plead that it adopted the

trademark and used it sufficiently so that the public can identify or distinguish

SwipeBids from other penny auctioneers.

In regard to the second element, the Court considers seven factors in

assessing whether there is a "likelihood of confusion":

> (1) the type of mark (in short, whether the "relationship between the
> name and the service or good it describes" is such that the chosen name
> qualifies as generic, descriptive, suggestive, or arbitrary); (2) the
> similarity of the marks (based on "the overall impressions that the marks
> create, including the sound, appearance, and manner in which they are
> used"); (3) the similarity of the goods ("whether the products are the kind
> that the public attributes to a single source"); (4) the similarity of the
> parties' retail outlets, trade channels, and customers ("consider[ing]
> where, how, and to whom the parties' products are sold"); (5) the
> similarity of advertising media (examining "each party's method of
> advertising" to determine "whether there is likely to be significant
> enough overlap" in the respective target audiences such "that a possibility
> of confusion could result"); (6) the defendant's intent (determining

16

whether the defendant had a "conscious intent to capitalize on [the plaintiff's] business reputation," was "intentionally blind," or otherwise manifested "improper intent"); and (7) actual confusion (that is, whether there is evidence that consumers were actually confused).

Midway Servs., 508 F.3d at 648 (quoting Frehling Enters., Inc. v. Int'l Select Grp., 192 F.3d 1330, 1335 (11th Cir. 1999)). Terra says that there is a likelihood of confusion via Defendant's use of "search engine spam," in which Defendant uses the SwipeBids trademark for its website to cause search engines to make PAW one of the top search results for "SwipeBids." (Dkt. No. [1] at ¶¶ 20–21). Defendant argues that "Plaintiff provides nothing more than an unsubstantiated conclusory allegation that [PAW] causes such confusion, which the website on its face belies." (Dkt. No. [13] at 19).

Plaintiff's argument to show consumer confusion is similar to one addressed by the Eleventh Circuit in N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211 (11th Cir. 2008). In that case, the plaintiff alleged trademark infringement against a defendant who had "included [trademarked] terms within its meta tags[2] to influence Internet search engines." Id. at 1216. In Axiom the Eleventh Circuit concluded "that a company's use in meta tags of

---

[2]"Meta tags consist of words and phrases that are intended to describe the contents of a website." Id. at 1216 n.2. Internet search engines use meta tags to rank a web page or provide a searcher with a brief description of the web page. Id.

its competitor's trademarks may result in a likelihood of confusion." <u>Id.</u> at

1222. Therefore, the Court finds that Plaintiff has satisfied the pleading

requirements of FRCP 8(a) for its trademark infringement claim.

    E.    <u>Count III: Trade Libel</u>

    The Lanham Act does not furnish a cause of action for trade libel that has

distinct elements or remedies from Plaintiff's other Lanham Act claims. <u>See</u>

<u>IMCS, Inc. v. D.P. Tech. Corp.</u>, 264 F. Supp. 2d 193, 196–97 (E.D. Pa. 2003)

(treating false advertising, trade libel, and product disparagement claims under

the Lanham Act § 43(a) as having the same elements); 5 J. THOMAS

MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:10

(4th ed. 2011) (noting that the remedies for violations of the Lanham Act

§ 43(a) are the same and that the statute is divided into two subsections, one that

is used to assert "unregistered trademark, trade name and trade dress

infringement claims" and another that is used to assert "false advertising (as

well as trade libel) claims"). Every case in the Eleventh Circuit that deals with

trade libel is decided under Florida law or does not discuss the cause of action

in any detail. <u>See, e.g.</u>, <u>Aquatherm Indus., Inc. v. Fla. Power & Light Co.</u>, 84

F.3d 1388, 1394–95 (11th Cir. 1996) (finding res judicata to bar a Lanham Act

claim because a Florida court had dismissed the plaintiff's claims for trade libel

and product disparagement); <u>1021018 Alberta, Ltd. v. Integraclick, LLC</u>, No.

8:10-CV-47-T-30EAJ, 2010 WL 2293206, at *1 (M.D. Fla. June 8, 2010)

(stating, without addressing the merits of the claim, that the plaintiff alleged

trade libel pursuant to Section 43(a) of the Lanham Act). Indeed, cases in other

circuits separate state-law causes of action for trade libel from claims under the

Lanham Act. <u>See, e.g.</u>, <u>Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.</u>, 181

F.3d 446, 451–52 (3rd Cir. 1999) (stating that a company sued another entity

for, *inter alia*, violations of the Lanham Act and trade libel); <u>Johnson Controls,</u>

<u>Inc. v. Exide Corp.</u>, 152 F. Supp. 2d 1075, 1078–79 (N.D. Ill. 2001) (analyzing

the plaintiff's trade libel claim with his state law defamation claim rather than

with his false advertising claim). Because the Court finds that Plaintiff's claim

for trade libel under the Lanham Act does not set forth a cause of action distinct

from its claim for false advertising set forth in Count I, Count III of Plaintiff's

Complaint [1] is **DISMISSED**.

    F.    <u>Count IV: Defamation</u>

    A cause of action for defamation has four elements: " '(1) a false and

defamatory statement concerning the plaintiff; (2) an unprivileged

communication to a third party; (3) fault by the defendant amounting at least to

negligence; and (4) special harm or the actionability of the statement

irrespective of special harm.' " <u>Infinite Energy, Inc. v. Pardue</u>, No. A11A0293, 2011 WL 2571917, at *1 (Ga. Ct. App. June 30, 2011) (quoting <u>Mathis v. Cannon</u>, 573 S.E.2d 376, 380 (Ga. 2002)).

First, Plaintiff has alleged that Defendant made a "false or defamatory statement concerning the plaintiff" on its website. <u>Id.</u> This false statement constitutes libel. "A libel is a false and malicious defamation of another, expressed in print[ or] writing, … tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a). For a plaintiff to recover for libel, the libelous matter must be published, which happens "as soon as it is communicated to any person other than the party libeled." O.C.G.A. §§ 51-5-1(b), 51-5-3.

PAW allegedly published accusations that SwipeBids engaged in bot bidding, that the company consisted of "THIEVES," and that customers do not receive products that they win. (Dkt. No. [1] at ¶¶ 23–27). "A court looks to the plain import of the words spoken in order to ascertain whether the words constitute slander per se. To be slander per se, the words are those which are recognized as injurious on their face—without the aid of extrinsic proof." <u>Gordon Document Prods., Inc. v. Serv. Techs., Inc.</u>, 708 S.E.2d 48, 57 (Ga. Ct. App. 2011). Furthermore, " '[t]he definition of slander in Georgia has been

incorporated into the definition of libel.' " <u>Lucas v. Cranshaw</u>, 659 S.E.2d 612, 616 (Ga. Ct. App. 2008) (alteration in original) (quoting <u>Hayes v. Irwin</u>, 541 F. Supp. 397, 431 n.34 (N.D. Ga. 1982)). Because accusations of fraud and theft in trade injure a business's reputation, the Court finds that Terra sufficiently alleged Lee made a false and defamatory statement concerning the plaintiff.

Second, Plaintiff must show that Defendant made an "unprivileged communication to a third party." <u>Pardue</u>, 2011 WL 2571917, at *1 (quoting <u>Mathis</u>, 573 S.E.2d at 380). Privileged communications include "[s]tatements made in good faith as part of an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern." O.C.G.A. § 51-5-7(4). In turn, these statements include "any … statement … made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." O.C.G.A. § 9-11-11.1(c). In arguing that the Court should apply the anti-SLAPP statute, Lee says that her speech is a matter of public concern that should be protected because "speech prior to the initiation of any official proceeding" is protected and her speech "related to petitioning the government … or an issue of public

concern." (Dkt. No. [15] at 13–14). However, even if some of her speech is protected as privileged communication, "[p]roof that the defendant acted with actual malice in making the statement … defeats the defense of privilege." Chaney v. Harrison & Lynam, LLC, 708 S.E.2d 672, 678 (Ga. Ct. App. 2011) (alterations in original) (quoting Fine v. Commc'n Trends, Inc., 699 S.E.2d 623, 630 (Ga. Ct. App. 2011)). Indeed, plaintiff alleges that the defamatory statements were made "without any regard for the truth" and "were motivated by Defendants' desire to profit from those statements." (Dkt. No. [1] at ¶ 28). Therefore, with all reasonable inferences drawn in favor of the plaintiff, Terra has shown that the communication at issue was unprivileged.

As to the third element, "fault," the Court must determine whether Terra is a public or private figure. Pardue, 2011 WL 2571917, at *2. "To recover on a defamation claim, a plaintiff who is a private person need only prove that the defendant acted with ordinary negligence, whereas a plaintiff who is a public figure must prove by clear and convincing evidence that the defendant acted with actual malice." Id. But, whether Plaintiff should be considered a private person or public figure is inconsequential for the purpose of Lee's Motion to Dismiss [13] because Terra has alleged actual malice. (Dkt. No. [1] at ¶¶ 27–28, 60). Therefore, it has sufficiently plead fault.

Finally, Plaintiff must show a "special harm or the actionability of the statement irrespective of special harm." <u>Pardue</u>, 2011 WL 2571917, at *1 (quoting <u>Mathis</u>, 573 S.E.2d at 380).  "Slander or oral defamation includes, *inter alia*, '[m]aking charges against another in reference to his trade, office or profession, calculated to injure him therein … .' " <u>Strange v. Henderson</u>, 477 S.E.2d 330, 332 (Ga. Ct. App. 1996) (alterations in original) (quoting O.C.G.A. § 51-5-3(a)(3)). If such a statement is made, the "defamation is actionable per se and damage is inferred." <u>Id.</u> Plaintiff alleges that Defendant made statements that SwipeBids committed fraud on its customers, which is actionable per se. (Dkt. No. [1] at ¶¶ 23–27). Therefore, a special harm is shown, and Plaintiff has adequately asserted a claim for defamation.

G.   <u>Count VI: Negligent Interference with Contractual Relationships</u>

In Count VI, Plaintiff alleges that Defendant is liable for negligent interference with contractual relationships. (Dkt. No. [1] at ¶¶ 73–78). Plaintiff, in response to Lee's Motion to Dismiss [13], cites no statute or case law in support of its claim. Furthermore, "[i]nterference with contractual relations is an *intentional* tort." <u>Piedmont Cotton Mills, Inc. v. H. W. Ivey Constr. Co.</u>, 137 S.E.2d 528, 531 (Ga. Ct. App. 1964) (emphasis in original). Georgia law does

23

not furnish a cause of action for negligent interference with contractual

relationships. Count VI of Plaintiff's Complaint [1] is **DISMISSED**.

      H.      <u>Counts VII: Tortious Interference with Potential Business Relations</u>

To establish a cause of action for tortious interference with business

relations, a plaintiff must show that the defendant "(1) acted improperly and

without privilege, (2) purposely and with malice with the intent to injure, (3)

induced a third party or parties not to enter into or continue a business

relationship with the [plaintiff], and (4) for which the [plaintiff] suffered some

financial injury." <u>Tom's Amusement Co. v. Total Vending Servs.</u>, 533 S.E.2d

413, 416 (Ga. Ct. App. 2000) (quoting <u>Athens Int'l, Inc. v. Venture Capital

Props., Inc.</u>, 495 S.E.2d 900, 903 (Ga. Ct. App. 1998)).

The allegations about Lee's conspiracy and defamation of Terra are

sufficient to show that defendant acted improperly and without privilege, and

that defendant did so purposely with malice and with the intent to injure. (Dkt.

No. [1] at ¶¶ 11, 23–27, 29, 32,). Furthermore, Plaintiff plead that it suffered

financial injury. (<u>Id.</u> at ¶ 38). To show that Lee induced a third party or parties

not to enter into or continue a business relationship, Terra must demonstrate

that absent Lee's interference, prospective business relations "were reasonably

likely to develop in fact." <u>Galardi v. Steele-Inman</u>, 597 S.E.2d 571, 577 (Ga. Ct.

App. 2004). If—as Plaintiff states—SwipeBids is "the preeminent and most

successful penny auction site[] in the world," it is fair to infer that Lee's

allegations on PAW may have dissuaded some prospective customers from

developing a relationship with SwipeBids. (Dkt. No. [1] at ¶¶ 2, 11, 29, 37,

80–84). Plaintiff's allegations are sufficient, at this stage of the litigation, to

state a claim for tortious interference with potential business relations.

I.      Count V: Interference with Contractual Relationships

In contrast with the tortious interference claim, a cause of action for

intentional interference with contractual relationships "must be based on the

intentional and non-privileged interference by a third party with *existing*

contractual rights and relations." Tom's Amusement, 533 S.E.2d at 416

(emphasis in original) (quoting Athens Int'l, 495 S.E.2d at 903). Plaintiff

asserts that Defendant's defamatory statements interfered with Terra's

relationship with its existing customers and merchant bank, First Data, who

"suspended SwipeBids' merchant account." (Dkt. No. [1] at ¶ 37). However, as

to First Data, Plaintiff failed to plead how Lee knew about the contractual

relationship or that Lee acted with the intent to interfere with that contractual

relationship. To bring a claim for intentional interference with contractual

relationships, a Plaintiff must show knowledge and intent. See Tom's

Amusement, 533 S.E.2d at 417 (dismissing a claim for intentional interference

with contractual relationships because the defendant lacked the requisite knowledge and intent to interfere with the contractual rights of a third party). Therefore, Plaintiff has not met the pleading standard under Rule 8(a). Plaintiff's claim for intentional interference with respect to First Data is **DISMISSED**, but its interference claim with respect to existing customers is valid because Defendant was aware that Plaintiff had these relationships and intended to interfere with them.

### Conclusion

For the reasons state, Defendant's Motion to Dismiss Plaintiff's Complaint [13] is **GRANTED in part** and **DENIED in part**. Counts III and VI are **DISMISSED**, and Count V is **DISMISSED** as it relates to Plaintiff's contract with First Data. Defendant shall respond to Plaintiff's Complaint [1] in accordance with the Federal Rules of Civil Procedure.

**SO ORDERED**, this __15th__ day of July, 2011.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)